■ The People of the State of New York, Respondent, v James Thornton, Appellant.—Judgment, Supreme Court, New York County (James J. Leff, J., at *Huntley* hearing, plea, and sentence), rendered January 28, 1985, convicting defendant on his plea of guilty of murder in the second degree, and sentencing defendant to seven-years-to-life imprisonment, unanimously reversed, on the law, the facts, and as a matter of discretion in the interest of justice, the motion to suppress granted, and the case remanded for trial.

According to the confessions of both defendant and codefendant David Velasquez, the defendant, then 15 years old, and Velasquez, then 18 years old, planned the robbery of a delicatessen where Velasquez was employed. It was agreed that while Velasquez held the proprietor's arms, defendant would stab the proprietor with a knife given him by Velasquez for that purpose. This plan was carried out. The proprietor died of numerous stab wounds inflicted by defendant. Having taken a gold chain from the proprietor's body, and having looted the cash register, defendant cleaned the bloodied floor while Velasquez waited on customers. The two youths then went by taxi to their school, where they divided the proceeds of the robbery.

Suspicion soon fell upon Velasquez, who was arrested the

same day. A full confession, and Velasquez' bloody clothes, were obtained by the police. Velasquez revealed defendant's involvement in the crime, and also told police, which is most significant to our reversal, that defendant was to appear in Family Court that month in connection with a case pending against defendant for a "stick up."

Detective Gill, to whom this information was given, ran defendant's name in a BCI namecheck for previous arrests, but found no known cases. He admitted at the *Huntley* hearing below, however, that a juvenile arrest "might very well not appear" in a BCI namecheck. He further admitted that he was aware, prior to arresting defendant in the early morning hours the day following the robbery, that defendant was 15 years old. Nevertheless, Detective Gill did not ask defendant if he was represented by counsel on any unrelated charges before questioning defendant and obtaining a full confession.

In denying defendant's motion to suppress his statements, the court below declined to follow the holding of *People v Bartolomeo* (53 NY2d 225), which the court referred to as a "damn fool decision." After denial of the motion to suppress, defendant pleaded guilty.

We reverse and grant the motion to suppress. The police had information from the codefendant Velasquez, not only that there were pending charges against defendant, but that defendant was to appear in court in connection with those charges the very same month. This triggered a duty to inquire as to whether defendant was actually represented by counsel on unrelated charges. *(People v Bartolomeo, supra; People v Servidio,* 54 NY2d 951, 953.) By his own admission, the computer check performed by Detective Gill would not confirm the existence of outstanding charges. At the very least, Detective Gill had a duty to ask the defendant if charges were pending and if defendant was represented. *(People v Rosa,* 65 NY2d 380; *People v Rodriguez,* 130 AD2d 690.)* We find the officer's unexplained failure to make a simple inquiry of the defendant indicative of a conscious effort to avoid discovery of the fact that defendant was in fact represented by counsel. Under these circumstances, the police are charged with the knowledge which would have been gained had valid efforts to inquire been undertaken.

During the course of the *Huntley* hearing, defendant's counsel represented that the charge against defendant in the Family Court would have constituted an assault if committed by an adult. Further, counsel stated that he had intended to

call as a witness defendant's attorney in the Family Court case, whom he identified by name, address and phone number. When counsel later stated that he believed it would be unnecessary to call the attorney to the stand, the following colloquy occurred:

"Prosecutor: I'll stipulate to the fact that there was a pending case if I see something that says there was a pending case.

"Defendant's Attorney: What do you mean, if you see something?

"Prosecutor: Do you have any letters?

"Defendant's Attorney: The lawyer was going to come down and testify.

"Prosecutor: I'll give the lawyer a call."

Counsel later stated that he rested "subject to Mr. Schlanger [the prosecutor] investigating a finding to the contrary, if he's willing to stipulate that there was a case pending, I'll just rest."

We find this colloquy, under the circumstances, to constitute a concession by the prosecutor that defendant was actually represented by counsel in an unrelated case. We interpret the prosecutor's statements to be a concession to these facts, subject to the prosecutor's right to repudiate the concession if an inquiry divulged some other state of facts. We do not read this colloquy as conceding only the fact of an outstanding charge, and not also to the fact of representation, even though the language might have been better chosen to reflect what we find to be the only fair and reasonable intent of both defendant's counsel and the prosecutor. If we had any doubt that this is a correct interpretation of the record, we would, in the interests of justice and in the exercise of discretion, permit the defendant to reopen the hearing to cure counsel's inadvertence. We do not find it necessary to reopen the hearing in view of the prosecutor's conduct in affirmatively undertaking the obligation to dispute the facts represented by defendant's counsel. We note that at no time did the prosecutor challenge below the alleged failure of proof in defendant's case, and to this extent we also find the District Attorney's argument to be unpreserved for appellate review. Concur—Carro, J. P., Asch, Milonas and Rosenberger, JJ.